NUMBER 13-05-443-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GRAHAM LAND AND CATTLE 

COMPANY, ET AL., Appellants,


v.


THE INDEPENDENT BANKERS BANK, ET AL., Appellees.

 


On appeal from the 25th District Court of Gonzales County, Texas


 


O P I N I O N



Before Justices Hinojosa, Rodriguez, and Garza


Opinion by Justice Garza


 

 This appeal follows the entry of a take-nothing summary judgment against
appellants on various claims against appellees in district court. We reverse the order
granting summary judgment and remand for further proceedings consistent with this
opinion.


I. Proceedings Below 

 Appellants own and operate Graham Land and Cattle Company, a custom feed
yard, which operates by "raising thousands of valuable cattle for others until they are ready
for sale." (1) Appellees are banks and bankers who were involved in providing the business
with a $7.3 million line of credit. This case arises from four statements allegedly made by
appellees Danny Bishop and John Jay at two meetings attended by appellants and others: 
(1) "We have lost confidence in management, and we want a change immediately"; (2) "A
large group of cattle are missing"; (3) "2,200 head of cattle are missing"; and (4) "There is
one million dollars lost in missing cattle, 2,200 head." By all accounts, appellant Charles
Graham immediately denied the allegations and appellant Jay Gray was "pretty much in
shock." The parties also agree that, as a result of these statements, appellants were
required by appellees to undergo certified audits at their own expense and were
subsequently exonerated of any wrongdoing regarding the alleged missing cattle. 

Appellants then filed suit. Their original petition asserted causes of action against
appellees for (1) "slander and libel," (2) "business disparagement," (3) "tortious interference
with business relationships," and (4) "declaratory judgment." 

 In a joint motion for summary judgment, appellees argued that there were no
genuine issues of material fact and that they were entitled to judgment as a matter of law
because (1) appellants' causes of action for slander and libel had been filed outside the
one-year window allowed by the statute of limitations, (2) appellants could not prove an
essential element of their cause of action for business disparagement because appellants
could not identify any specific business that they lost as result of the statements at issue,
and (3) appellants' cause of action for "tortious interference" failed as a matter of law
because appellants could not identify any specific contract that had been subjected to
interference. 

 One week before the hearing on the motion for summary judgment, appellants filed
a response. They also filed a first supplemental petition, adding causes of action for
"defamation per se," "conspiracy," and "negligence." The next day, appellants filed a
supplement to their response. Then, on the day before the hearing, appellants filed a
second supplemental petition, adding a cause of action for "libel per se."

 After holding the scheduled hearing, the trial court granted appellees' motion for
summary judgment. Appellants then filed a motion for new trial and motion to reconsider,
which were denied after a second hearing before the trial court. 

 Appellants now raise five issues on appeal.

II. Disposition of Appeal

A. Claims Not Addressed by the Motion for Summary Judgment: 

Tortious Interference with Business Relationships, Declaratory Judgment,
Negligence, and Conspiracy 

 In their first issue, appellants contend that the trial court erred in granting summary
judgment on claims that, according to appellants, the "motion for summary judgment
neglected even to mention." Appellants contend that the motion presented no express
grounds for summary judgment on their causes of action for (1) "tortious interference with
business relationships," (2) declaratory judgment, (3) negligence, or (4) conspiracy. See
Tex. R. Civ. P. 166a(c).

 Having reviewed the record, we agree. Appellees' motion for summary judgment
did not address appellants' claims for declaratory judgment, negligence, or conspiracy. 
Summary judgment was therefore improper on these claims. See Tex. R. Civ. P. 166a(c)
(requiring that motion for summary judgment "state the specific grounds therefor");
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 1997) ("[I]f a defendant moves for
summary judgment on only one of four claims asserted by the plaintiff, but the trial court
renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final
- erroneous, but final."); Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993)
("[S]ummary judgment cannot be affirmed on grounds not expressly set out in the motion
or response."). (2) Although appellees maintain that their motion indirectly addressed these
claims, we are unpersuaded by their arguments, especially because their motion was filed
well in advance of the negligence and conspiracy claims that were pled only days before
the summary judgment hearing. 

 The motion for summary judgment also failed to address appellants' claim for
tortious interference with prospective business relations. Notably, appellees did address
and argue for judgment as a matter of law on a claim they referred to as "tortious
interference." Quoting and relying on the elements of a claim for tortious interference with
an existing contract, appellees argued that appellants' claim failed because appellants
could not identify any contract that had been the subject of tortious interference. 

 In their written response to the motion for summary judgment, appellants specifically
stated that their claim was for tortious interference with prospective business relations and
not tortious interference with an existing contract. Compare Prudential Ins. Co. of Am. v.
Financial Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000) (enumerating elements for
tortious interference with an existing contract) with Wal-Mart Stores, Inc. v. Sturges, 52
S.W.3d 711, 723 (Tex. 2001) (stating that although the Texas Supreme Court's "decisions
clearly recognize a cause of action for tortious interference with prospective business
relations, none attempts to state the elements of tortious interference with prospective
business relations or to define precisely what conduct is culpable") (internal citations
omitted). Appellants also maintained that summary judgment was improper because a
cause of action for tortious interference with prospective business relations could be
established as a matter of law without identifying a specific contract that had been the
subject of interference. 

 Appellees neither amended their motion for summary judgment to address this
point, nor filed special exceptions to the live petition. On appeal, appellees contend that
their motion actually argued for summary judgment on a claim for "tortious interference with
existing and/or prospective contracts." See Appellees' Brief p.8. We disagree. 
Appellees' argument for summary judgment was constructed on the premise that the claim
failed because appellants could not identify a specific contract that had been subject to
interference. An appellate court cannot read between the lines, infer or glean from the
pleadings or the proof any grounds for granting the summary judgment other than those
grounds expressly set forth before the trial court in the motion for summary judgment. See
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993). We therefore
decline to construe appellees' motion as addressing the claim for tortious interference with
prospective business or contract relations. (3)
 

 Appellees also contend that appellants failed to preserve this error by not filing
special exceptions to the motion complaining that the grounds for summary judgment were
unclear or ambiguous. See id. at 342-43. Again, we disagree. In their written response
filed with the trial court, appellants clearly stated that appellees had misconstrued their
claim and were mistakenly asking for summary judgment on a claim that had not been
pled. To hold that such measures failed to preserve the issue would be inappropriate and
unduly harsh, as it has long been held that a summary judgment must stand or fall on its
own merits. See id. 

 Because the motion for summary judgment did not address the claim for tortious
interference with prospective contract or business relations, we hold that the trial court
erred by granting summary judgment on this claim. See Ken Petroleum Corp. v. Questor
Drilling Corp., 24 S.W.3d 344, 356 (Tex. 2000) ("The motion for summary judgment did not
address that claim, and the trial court therefore erred in granting summary judgment . . .
.").

 Appellants' first issue is sustained. 

B. Business Disparagement

 In their second issue, appellants contend that the trial court erred by granting
summary judgment on their cause of action for business disparagement. To prevail on a
business disparagement claim, a plaintiff must establish that (1) the defendant published
false and disparaging information about it, (2) with malice, (3) without privilege, (4) that
resulted in special damages to the plaintiff. Forbes Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 170 (Tex. 2003); Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex.
1987). 

 In their motion for summary judgment, appellees divided their arguments into two
sections, one addressing Graham and one addressing Jay Gray. According to the motion, 
Graham could not succeed on his claim as a matter of law because (1) he could not
identify anyone outside the meetings with knowledge of the statements, as demonstrated
in his deposition; (2) he had "offered no direct evidence of pecuniary loss related to the
complained-of statements"; (3) he "can point to no lost business stemming from the
meetings' events"; and (4) in the alternative, the complained-of statements have "not
played a substantial part in inducing others not to deal with Graham." 

 The motion also argued that appellees were entitled to summary judgment against
Gray because he has "no personal liability" for the debt of the business and thus cannot
be said to have a "stake" in it. According to the motion, only a claimant with "a stake in the
business" can sue for business disparagement. 

 In their response to the motion for summary judgment, appellants argued that
summary judgment was improper because the undisputed evidence established that the
defamatory statements were published to an "independent third party," Wayne Franks, an
accountant who was present at the meetings. Appellants further contended that summary
judgment was improper because of evidence showing that appellant Graham had "incurred
substantial accounting and inventory costs" and was unable to expand his business as a
result of the "disparaging statements." Appellants also argued that summary judgment was
improper because appellant Gray has an "economic interest" in Graham Land and Cattle
by virtue of his annual bonus, which is dependent on the business's performance. 
Appellants pointed to evidence that appellant Gray "was not able to receive the sizeable
bonus he likely would have obtained had Graham Cattle's business operations not been
scarred by the Defendants' disparaging comments." 

 In their second issue, appellants contend that the trial court erred by granting
summary judgment on their business disparagement claim because appellees negated
neither publication nor special damages, the only essential elements challenged in the
motion. Appellees agree that the elements of publication and special damages are in
dispute, but they now posit, for the first time on appeal, that their traditional motion for
summary judgment presented an additional "no-evidence point with respect to Graham and
his business." See Appellees' Brief p.13. Appellees also contend that they argued as an
additional ground for summary judgment that "the alleged statements were not defamatory
or made with actual malice." See id. p. 17. 

 We disagree with these contentions. As a preliminary matter, the motion for
summary judgment was not argued as a no-evidence motion. And although we recognize
that a traditional motion for summary judgment might also include a no-evidence
point--disfavored as that practice is, see Michael v. Dyke, 41 S.W.3d 746, 751 (Tex.
App.--Corpus Christi 2001, no pet.)--there is nothing in either the clerk or reporter's record
to indicate that anyone understood appellees' motion as raising a no-evidence point. See
Binur v. Jacobo, 135 S.W.3d 646, 650-51 (Tex. 2004) (stating that rule 166a "does not
prohibit a party from combining in a single motion a request for summary judgment that
utilizes the procedures under either subsection (a) or (b), with a request for summary
judgment that utilizes subsection (i) . . . using headings to clearly delineate the basis for
[traditional] summary judgment . . . from the basis for summary judgment under subsection
(i) would be helpful . . . but the rule does not require it")). 

 In the section of appellees' motion for summary judgment addressing appellant
Graham's claim for business disparagement, appellees did include two sentences, which
we have underlined, that could be arguably construed as being part of a no-evidence point:

Testimony from both Graham and Gray reveals that they did not know of any
individual, other than those present in the meetings, who had knowledge of
the statements giving rise to this case. Further, Graham has offered no
direct evidence of pecuniary loss related to the complained-of statements
made during the August and September business meetings. Graham can
point to no lost business flowing from the meetings' events and testified that
he is unaware of anyone in the banking circles, in the cattle business, or in
his family who have ever heard any of the allegations. Thus, the
communication, if made, has not played a substantial part in inducing others
not to deal with Graham with the result of special damages to his business. 
Because there is no evidence that Graham and his business suffered special
damages, Graham's claim fails as a matter of law and Defendants are
entitled to summary judgment on this claim. 


 Although we have not included any internal citations in the above quote, appellees
did include such references in their motion. In doing so, appellees ostensibly attempted
to establish, by reference to their summary judgment evidence, that there were no fact
issues on the claim for business disparagement. This is an approach consistent with a
traditional motion for summary judgment. Although appellees said twice that there was "no
evidence," we cannot ignore that these statements were made as appellees were
attempting to establish a traditional basis for summary judgment. Even if we were to
conclude that these statements attempted to raise a no-evidence point, this Court has long
frowned on draftsmanship that combines traditional and no-evidence grounds for summary
judgment in a single motion. See, e.g., id. Because it is not readily apparent that summary
judgment was sought on no-evidence grounds, we analyze the motion as a traditional
motion for summary judgment. See id. 

 We also disagree with counsel's assertion that appellees argued for summary
judgment on the claim for business disparagement on grounds that "the alleged statements
were not defamatory or made with actual malice." Although appellees made these
arguments, they did so in a different section of the motion, one that argued for summary
judgment on the claim for slander, not the claim for business disparagement. We find it
improper for counsel to represent that appellees moved for summary judgment on the
business disparagement claim on these particular grounds without making that fact clear. 
The grounds were actually argued as to a different claim and were not incorporated even
by reference into the argument for summary judgment on the claim for business
disparagement. 

 On appeal, counsel for appellees also argues that appellees requested summary
judgment on the basis that "the communication [to Wayne Franks was] . . . invited by the
person defamed" and is therefore no "publication." See Appellees' Brief pp. 15-16. We
have reviewed the record and find no indication that appellees ever requested summary
judgment on this ground.

 Having clarified the grounds for summary judgment that were expressly presented
on the claim for business disparagement and that can be used to support the judgment on
appeal, we proceed to review appellants' second issue. Because this is an appeal from
a summary judgment, we take as true evidence favorable to the non-movant. See
Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). If the defendant
disproves at least one element of the plaintiff's claims as a matter of law, summary
judgment is appropriate. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477
(Tex. 1995). 

 We begin with the element of publication. Appellees concede in their appellate brief
that the statements at issue were published to Wayne Franks, a third party, who was
present at the meetings when the statements were made. See Appellees' Brief p. 15. 
Although appellees argue that appellants invited the communications to Franks and that
the communications therefore do not amount to publication, we have already noted why
it would be inappropriate to uphold the summary judgment on this ground. Accordingly,
we conclude that appellees did not establish their entitlement to summary judgment by
negating the element of publication. 

 Next, we consider whether appellees established their entitlement to judgment as
a matter of law by negating the existence of special damages. Pecuniary loss to the
plaintiff must always be proved to establish a cause of action for business disparagement. 
Hurlbut, 749 S.W.2d at 766. The Texas Supreme Court has relied on the Restatement
(Second) of Torts to explain and develop the common law cause of action for business
disparagement, a claim known outside Texas as "injurious falsehood." See, e.g., Forbes,
124 S.W.3d at 170 (referencing Hurbult decision and continued reliance on the
Restatement). Among other things, the Restatement requires that a claimant establish a
causal nexus between the injurious falsehood and the pecuniary loss suffered:

§ 632 Legal Causation of Pecuniary Loss


The publication of an injurious falsehood is a legal cause of pecuniary loss
if


(a) it is a substantial factor in bringing about the loss, and


(b) there is no rule of law relieving the publisher from liability because of the
manner in which the publication has resulted in the loss. 


Restatement (Second) of Torts § 632 (1977). The Restatement also defines "pecuniary
loss" in the context of an injurious falsehood:

§ 633 Pecuniary Loss


(1) The pecuniary loss for which a publisher of injurious falsehood is subject
to liability is restricted to


(a) the pecuniary loss that results directly and immediately from the effect
of the conduct of third persons, including impairment of vendibility or value
caused by disparagement, and


(b) the expense of measures reasonably necessary to counteract the
publication, including litigation to remove the doubt cast upon vendibility or
value by disparagement. 

 

Restatement (Second) of Torts § 632(1) (1977). 

 We have reviewed the motion for summary judgment, appellants' written response
to the motion, and all the evidence cited in support of the parties' various contentions. Appellees' motion for summary judgment did not negate the existence of special
damages. To the contrary, the summary-judgment evidence cited in and attached to
appellants' written response tends to show that appellant Graham has in fact suffered
pecuniary loss. There is evidence showing that Graham's business has "incurred
substantial accounting and inventory costs" as a result of the disparaging statements. The
evidence also shows that these costs were incurred as a result of measures to disprove
the statements at issue and that many of the expenses will continue in the future as
Graham undergoes mandatory business audits. See id. 

 Appellants' written response also pointed out summary judgment evidence tending
to prove that appellant Gray has an economic interest in the performance of Graham Land
and Cattle that he has attempted to protect through this litigation. See Forbes, 124 S.W.3d
at 170 ("[A] business disparagement claim protects economic interests."). Gray is the
general manager of the company, and he receives an annual bonus based on the financial
performance of the company. The summary-judgment evidence tends to show that Gray
received a smaller bonus in the year in question because the company's performance was
directly diminished by the "substantial accounting and inventory costs" incurred to disprove
the statements at issue. As noted above, there is also evidence tending to prove that
"substantial accounting and inventory costs" will continue to be incurred as a result of the
statements at issue. 

 Because appellees failed to negate an essential element, the trial court erred in
granting summary judgment on the claim for business disparagement. Appellants' second
issue is sustained. (4)

C. Tortious Interference with Business Relationships

 In their third issue, appellants argue that the trial court erred by granting summary
judgment on their cause of action for tortious interference with business relationships. 
Because we have already reversed the trial court's order because it erroneously awarded
summary judgment on this claim, we need not address appellants' third issue. See Tex.
R. App. P. 47.1. 

D. Slander and Libel

 In their fourth issue, appellants contend that the trial court erred by granting
summary judgment to appellees on the claims for slander and libel. The parties agree that
the one-year statute of limitations applies to the claims. See Tex. Civ. Prac. & Rem. Code
Ann. § 16.002(a) (Vernon 2002). They also agree that the claims were filed more than one
year after the statements at issue were made and communicated to appellants and
published to a third person. Because the undisputed evidence shows that appellants
immediately recognized the statements as false and defamatory and began incurring out-of-pocket expenses for remedial measure almost instantly, we conclude that their causes
of action accrued more than one year before their lawsuit was filed. See Childs v.
Haussecker, 974 S.W.2d 31, 36-37 (Tex. 1998) ("In most cases, a cause of action accrues
when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury
or if all resulting damages have yet to occur."). Accordingly, we overrule appellants' fourth
issue. 

E. Causes of Action Against Appellees Danny Bishop and John Jay 

 In their fifth issue, appellants complain that the trial court erred by granting summary
judgment to appellees Danny Bishop and John Jay on the ground that they were acting in
the course and scope of their employment at the time the allegedly defamatory statements
were made and published. Appellants' live petition named Bishop and Jay, in their
individual capacities and as employees of appellees, as jointly and severally-liable
defendants on all claims asserted in the lawsuit. In their motion for summary judgment,
appellees made the following argument as to why Bishop and Jay were entitled to
judgment as a matter of law:

The cause of action [sic] alleged against the Defendants, John W. Jay and
Danny Bishop, fail as there are no facts that can be shown by the Plaintiff
that the employee [sic], Jay and Bishop, were not acting in the course and
scope of their employment.


 To support this ground, appellees relied on respondeat superior, arguing that, as
employees acting in the course and scope of employment, they could not be held liable for
the claim against them. See Mata v. Andrews Transp., 900 S.W.2d 363, 366 (Tex.
App.--Houston [14th Dist.] 1995, no writ) ("Under Texas law, employers may be held liable
for negligent acts by their employees under a theory of respondeat superior only if the
employee's actions are in the course and scope of their employment.").

 We disagree. As appellants argue, an employee who commits, directs or
participates in a tortious act while acting within the scope of his employment is personally
liable for those acts. Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 927 (Tex.
App.--Corpus Christi 1991, writ dism'd). Appellants' fifth issue is therefore sustained. 

III. Conclusion 

 The trial court's order is reversed in part and affirmed in part. Specifically, summary
judgment was improper on the claims against all named defendants for (1) tortious
interference with business relationships, (2) declaratory judgment, (3) negligence, (4)
conspiracy, and (5) business disparagement. We reverse the summary judgment order
as it relates to these causes of action and remand the case to the trial court for further
proceedings. The remainder of the trial court's order is affirmed. 

 

 

 ________________________ DORI CONTRERAS GARZA, 

 JUSTICE

 

 Opinion delivered and filed 

 this the 31st_day of August, 2006. 
1. Appellants are Graham Land and Cattle Company, Charles Graham, and Jay Gray. Appellees are 
the Independent Bankers Bank, the Independent Bankers Financial Corporation, Roscoe State Bank, Danny
Bishop, and John Jay. 
2. Appellees' motion did specifically address, at length, appellants' causes of action for slander and
libel, which involve some common issues with the action for declaratory judgment. Appellants sought a
declaratory judgment "that their audits are true and correct and that the slanders, libels, and disparagements
of Defendants are not accurate, in whole or in part." Appellees' motion for summary judgment cannot fairly
be said to have addressed appellants' request for a declaration that "their audits are true and correct." The
motion therefore failed to provide a basis for granting summary judgment on the declaratory judgment action. 

3. We acknowledge the following sentence found buried in appellees' motion for summary judgment,
but we conclude that it does not present a ground for summary judgment on the claim for tortious interference
with prospective business relations: 


Further, Plaintiffs do not show that statements made during the business meetings involved
"knowing inducement" or other intentional interference by Defendants to establish a cause
of action in Texas for tortious interference. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925
(Tex. 1993). 


Appellees ask this Court to construe the foregoing sentence as an express basis for summary judgment that
would apply both to a claim for tortious interference with an existing contract and to a claim of interference
involving prospective business relations. 


We will not do so. The sentence was not offered as a ground for summary judgment on appellants' claim for
interference with prospective business relations. First, nowhere in the motion for summary judgment do
appellees acknowledge a distinction between a claim for interference with an existing contract and a claim
for interference with prospective business relations. Instead, they argued throughout the motion that a claim
for "tortious interference" could survive only if a contract had actually been the subject of interference. 
Second, nowhere in the motion do appellees acknowledge that appellants could have pled more than one
claim for tortious interference. In other words, they never argued in the alternative or referred to the claim as
being plural or involving more than one legal cause of action. Third, nowhere in their motion do appellees
suggest that there is any ambiguity regarding appellants' claim for tortious interference, such as whether the
claim might relate to prospective business relations rather than an existing contract. Fourth, the sentence that
arguably relates to the claim for tortious interference with prospective business relations is found in a section
of the motion devoted to tortious interference with an existing contract. Fifth and finally, the opinion cited in
support of the sentence above deals with a claim of interference with an existing contract, not interference
with prospective business relations. 


Furthermore, regardless of the claim to which it might apply, it is unclear that the above-quoted sentence could
be construed as an independent ground for summary judgment. The language "Plaintiffs do not show" would
be appropriate for a no-evidence point, but no such points were raised in the motion for summary judgment. 
Rule 166a(i) requires the movant to specify the essential element or elements of a claim or defense to which
there is no evidence. Tex. R. Civ. P. 166a(i). Thus, appellees could not have raised a no-evidence point
without first identifying the specific claim and the essential element for which there was no evidence. Because
appellees never identified the correct claim, they could not have properly moved for summary judgment on
that claim based on a no-evidence point. 


We therefore cannot construe the sentence as an express ground for summary judgment on a claim for
tortious interference with prospective business relations, a claim which was otherwise entirely neglected by
the motion for summary judgment. 

4. Appellants' written response to the motion for summary judgment also argued that a fact issue
existed on special damages because the evidence showed that appellant Graham was "unable to expand [his]
business" as a result of the disparaging statements. These contentions were made with appropriate
references to specific evidence in the summary-judgment record. Because we have already concluded, based
on the out-of-pocket expenses and lost income discussed above, that appellees failed to negate special
damages, we do not reach any questions regarding the loss of business expansion as special damages in
this case. See Tex. R. App. P. 47.1.